2249 Rembrandt Gaming Technologies v. Boyd Gaming Corporation Ms. Scowcroft Thank you, Your Honor. Good morning. May it please the Court, 33 of the 35 claims of the Dietz patent are directed to player designation or choice of symbols for replacement. Claim 32, which is the only claim at issue on this appeal, is not one of those claims. The arguments of the appellees here and the decision of the District Court are against this Court's holding in Phillips. And it's important, I think, to talk a little bit about Phillips because the arguments that were made there and the facts that were present in the specification there track almost directly the specification and the arguments that are present here. In Phillips, this Court held that baffles extending inwardly from the walls could include baffles that were oriented at a 90 degree angle from the wall face even though in the specification there was not a single disclosure of baffles that were oriented at 90 degrees. Well, but this wasn't, I mean, putting aside the absence of a disclosure, what the Court focused on was sort of the negative language in the specification and then the prosecution history. In other words, that it's not so much that you didn't disclose a machine doing the designating even to the point where, as you recognize, that could create an enablement or written description problem, but that you said that's not what the patent is about. It's about player designation. And then in the prosecution history, that's how you emphasized your difference from the prior act. So I think that goes to the issue of whether or not there was a disclaimer in the prosecution history or... And in the specification, too. Or in the specification, correct. And if we're past the part about the ordinary meaning, and we understand that the ordinary meaning of the claims here is that they do, that they are broad enough to apply to machine designation. And in fact, in this case, I think it's even more clear than that. I think Claim 32 is very clear that it is directed to machine designation. What does machine designation mean? So does the machine actually then favor the player? No. Machine designation means that the microprocessor of the slot machine, which is making all of the decisions that go into every other step of Claim 32, the selection of initial symbols, the displaying of initial symbols, the selection of replacement symbols... But the implication is that it actually makes a choice rather than just randomly spins, because otherwise you wouldn't be differentiated from the prior act. The machine in Claim 32 is programmed to decide which of the initial displayed symbols will be respun and replaced with replacement symbols. That's what that means. And I think that the preamble of Claim 32 is clear. So the machine is programmed to favor the player. I don't know that it's programmed to favor the player. It's programmed to provide the player a respun when conditions are met. So you can have the machine... But the player doesn't want a respun if they have no idea what's going to get respun. I mean, unless they're confident the machine is going to respun. Like, they've got two here, and the third column has nothing. They're either confident the machine is going to only respun the third column, or why would they bother? Well, that's what I'm saying, is that the entirety of the 477 patent is not directed to player choice. It's directed to player interest. And if you look at the background and the specification of the patent, it talks about one of the problems that the 477 patent sought to solve was to turn the game of chance into more of a game of skill.  The title of the 477 patent itself is instructive. It is an electronic second-spin slot machine. An additional problem that the background of the specification makes clear that Mr. Dietz was seeking to solve was the problem of finality. You put in a coin, you spin the machine, and you're done. And if you don't have a winning combination, you're done, and you have to start again. Well, there was re-spinning occurring in the prior art, and his description of it was that the problem was that it was random. So are you saying that the patent was solving the random spinning? There was not random re-spinning in the prior art. I don't think that's an accurate statement of the record or the prior art. The background of the specification explains that there was no opportunity for a re-spin. The only thing that was present in the prior art was this concept of this nudge, where you would spin the reels and you would see what you see on the reels in the pay line, and then you could also see some potential additional symbols present, and you could decide whether, and again, this was player choice in this prior art device, you could decide whether to push it forward and nudge the symbol to create a new combination. There was not automatic re-spinning in the prior art, and that is exactly what Claim 32 is directed to. It's a situation where the finality that's created by the prior art single-spin systems was resolved by the player getting a set of symbols, maybe not a win, but maybe close to a win. Maybe there are two cherries and you need three to win. The machine can be programmed to re-spin all of the other symbols to see whether you get another cherry. And so it was the excitement of having not just one try, but two, that the background of the specification talks about as an additional problem that this invention sought to solve. We don't dispute that a significant portion of the specification in the prosecution history is directed to player designation and player choice. That is because 33 of the 35 claims in the patent are directed to player choice. Claim 20, as it was initially presented when the application was filed, for example, had explicitly in it player choice. Can you show me any place in the specification where it actually discusses machine designation and how that would occur? So the part of the specification that talks about machine designation of initial symbols is found at column 9, lines 30 to 34. And it talks about the ability to program the machine to automatically re-spin all initial symbols that are the same as the symbol the player selects. So in that embodiment, for example, which is just one potential embodiment. In a further modification of the embodiment where the player can choose only one box to re-spin, the apparatus of the present invention could also re-spin all other boxes? Correct. And in order to carry that out, the operating system of the machine has to be programmed in order to know if the player picks a cherry, I need to pick all other cherries and re-spin them. But you still have to have player choice to begin with. You would have some player involvement, but you would also have machine designation. This is a hybrid or combination. Do you have anything that shows or discusses how the determination would be made by the machine alone? I don't think that it's any different from the way that the machine determines what symbols to display or determines knowing how to spin other cherries if one cherry is selected. The way that the machine selects symbols for display, it talks about using, for example, a random number designator. And so a particular number will be associated with a cherry, another number might be associated with an orange, and the microprocessor produces a random number generator and it knows then what symbols to plug into each box. There's absolutely no reason that a person of skill in the art wouldn't know that you could also program that number associated with a cherry to be associated with a cherry to be re-spun. So there's no limitation that the program would favor either the player or the house, so to speak? There's nothing to show that if it's totally random, then what difference does it make? It doesn't make a difference in terms of the odds to the casino. It makes a difference in terms of player enjoyment. And that's what the patent talks about in the background. The finality of one spin and you're done until you put in another coin is something that was frustrating to players. This invention allows for increased player enjoyment because you get your first spin and then you get another. And in fact, all of the accused devices... So is this, these six lines or whatever, this is it? This is your entirety of your support in the specification for machine designation? I don't think that's the only support for machine designation. There's also a section in column nine, lines two through eight, that talks about re-spinning symbols again. If they first re-spin, produces the same initial symbol as was previously displayed. But then the rest of the specification where it talks about... Well, it says it could be automatically re-spun at the player's option. So the player still has to say that they want it re-spun. It says it could be re-spun automatically or at the player's option, I believe. But the symbol that was previously designated by the player could be re-spun. Correct. In this case, the player makes a determination to re-spin, and the machine is programmed to know that if that symbol that pops up on the re-spin matches the symbol that the player asked to have re-spun, that it would produce a new symbol. So where is the machine doing the designation? Well, the machine is programmed to know to do that. And I think the rest of the specification teaches someone of skill in the art how you would program a machine to know what to do. Show me where. Well, the entirety talking about the microprocessor and the use of the random number generator to select symbols. I'm not suggesting that it specifically tells you that you're going to do it with a machine. And that's where we started off this morning, is saying this is very much tracking of Phillips. I cannot tell you that there is a specific disclosure in the specification teaching all of the ways that you would perform Claim 32 without any player involvement. But that was also true in Phillips, that there was no disclosure of a baffle at 90 degrees, and yet the court held that the words of the claim are controlling. And where there is nothing in the specification that is tied to those words of the claim that provides a disclaimer or an alternative definition, that we use the plain language of the claim. And here that's really important because the plain language doesn't have to be, you don't need a disclaimer if in fact there is an absence of an adequate description. If all you have is to say, and also maybe you get another chance if the machine feels like giving it to you isn't enough. Right, but the description of the invention in the specification talks about a second spin re-spin, a second spin re-spin machine. And it talks about the ability to have that second spin. It is only in the context of discussing preferred embodiments where the specification goes into who is actually doing the designating of symbols for re-spin. So the discussion in the specification is not entirely directed to player designation, although there is certainly a significant portion that is. The claims here on their face are clearly directed to the operation of the electronic gaming apparatus. And the claims where the patentee sought to talk about player choice or player designation were worded very differently. Those claims, for example, Claim 30 says, allowing the player to designate symbols for replacement. So what you've said really raises right on point with Judge Reyna's question. I'll read it to you. How does Claim 32 achieve the goal of the invention, that is, skill in player choice, if the machine designates which symbols are replaced? And I guess the answer is that the goal of the invention, one goal is giving the player choice, but that is not the entirety of the invention. And so Claim 32, I agree, does not give the player necessarily a choice, at least with respect to the limitations that are set forth in here. Claim 32, however, is directed to another aspect of the invention, which is giving the player an opportunity for replacement of symbols. Whether or not the player has any involvement in that replacement, or whether or not the player has any involvement in choosing which symbols will be replaced, is not the point, I would submit.  Yes, 33 of the 35 claims are directed to that, but there is a second piece of this patent that is directed to improving the player experience by not having the finality with one spin, by giving them that second spin and giving them that opportunity for an improvement, which makes the games more enjoyable. These are the most popular games at the casinos right now, the ones where the machine's doing the re-spin. So this is an aspect of the invention. It is not, the bulk of the claims are not directed to it, but it is not something that was not part of the specification. Okay, let's hear from the other side. You have some rebuttal time left. Mr. Meese. Good morning, and may it please the Court. The District Court judgment should be affirmed because both the specification and the prosecution history repeatedly and consistently describe the invention requiring player designation, and there is absolutely no disclosure anywhere of machine designation of initial symbols for replacement. Don't you have the problem of claim differentiation here, where one claim actually requires the player designation and the other doesn't? No, and I'll answer that in two parts. As an example, if you take a look at original claim 18, and you can see that in the record at 947, claim 18 generically recited designating initial symbols for replacement with nothing in front of the gerund, just like claim 32. Claim 18 was rejected over the prior art, and the applicant distinguished the reference by saying there was no provision in the prior art for allowing the player to select initial symbols for replacement, and therefore it was entirely a game of chance, whereas applicant slot machine involved an important element of skill, i.e. choosing which slot machine symbols to replace. So from the very beginning, the applicant has always treated every single designating step as being the player designating which initial symbols to choose for replacement. Then what is the difference between those two claims? The difference between claim 32 and 30 is there's two differences. In claim 30, there's a very specific definition of winning combination. It was defined as assessing whether particular symbols are aligned horizontally, vertically, diagonally, or in another geometric pattern. Claim 32 had another significant difference, which was this concept of a simulated spinning motion. Those two limitations that I identified were what the applicant used to distinguish those claims over the prior art. He never argued that one claim was directed to some form of machine designation of initial symbols, and the other was directed to a player choosing. Why is there different language then? Well, the applicant has used different language at different times to refer to the same thing. The fact is that every reference to the present invention and the specification required player designation. Every single embodiment required player designation. The applicant stated no less than seven times during the prosecution history that unlike his machine, the prior art did not allow player designation, and his invention was therefore a game of skill, not a game of chance. He did it in every single amendment, all five of them. He did it in his Rule 132 declaration. He even did it during the second examiner interview, and it was reflected in the interview summary. I think that the best example of this, where the applicant was making arguments with respect to all claims, can be found at page 53 of the red brief, where we have an annotated excerpt from page 159 of the record, which was an excerpt from the July 2, 2002, amendment. There, the applicant argued that the important difference is that in applicants' game, the player has been given a choice. He or she would not have had in a regular slot machine game. As recited in applicants' claims, all of them, it wasn't limited to any particular claim, but as recited in applicants' claims, the player has been allowed to designate a chosen number from none to all of said initially displayed symbols for replacement. Applicant submits that the freedom of choice allowed by applicants' slot machine is simply not present in any of the other prior art slot machine games. Explain to me how the accused infringing devices operate. Is it correct that there's just a random re-spin? Or do the machines somehow designate something for a re-spin? I don't know off the top of my head. There's a lot of these machines, and we didn't go through discovery on it. My recollection is the machines... Yeah, it's both. There's some where they automatically re-spin. There's some where the player selects. There are many hundreds of these machines, different types of these machines. Okay, so the ones where the player selects are ones that would be... That's not challenged here. That claim's not challenged here. Correct. The only claim at issue is claim 32. Okay, so the only devices challenged are those where the player doesn't select. If there's no player designation, then the claim shouldn't read on anything. Let me take a step back. The appellants have stipulated that if this claim construction is upheld on appeal, that judgment of non-infringement is appropriate with respect to whatever games they were accusing of infringement. Okay. I think an important point to note is when you're asking questions about where in the specification there was support for the concept of machine designation of symbols, the support that was identified was not machine designation of initial symbols. It was only machine designation of re-spun symbols. So, for example, if the player says, I don't want a banana, and then a banana comes up during the re-spin, well, the machine already knows you don't want a banana, so it would re-spin it again. There's never an instance in the specification or anywhere else in the intrinsic record where the machine is doing the designation of the initial symbol. And, in fact, if we take an example, if you have two apples, two oranges, and a pear, there's no way for the machine to know what symbols to replace. Do you replace the two apples and the banana or the pear trying to go for five oranges? There's just no way to know. There's no flow diagrams. There's no source code. There's no algorithms. There's no other explanation or suggestion that the machine could somehow do this. And, in fact, that's exactly why the district court got this right. The district court concluded in the Markman that if the machine is doing this, it's no longer a game of skill. It's just a game of chance. It's completely random. Well, you mean to say it's no longer a game of chance or a game of skill? Is there a difference? Is there a difference? Yes. The applicant has argued the whole basis for the alleged invention was that to make it more interesting for a player so that way they're not frustrated by having no ability to control the outcome, is they're given a choice. They can pick which column or row or diagonal to replace to get a second chance at getting a winning combination. So that was the point of distinction throughout the entirety of the prosecution. Applicant's game was a game of skill, and he disparaged all of the prior art as being simply games of chance. And the gaming laws are different with respect to games of skill versus games of chance. Correct. My understanding of Nevada law is that games of skill are not permitted. Okay. So unless there are any further questions. More questions? I think that we've answered Judge Rainer's. Yes. Okay. Thank you. Ms. Scobie, you have a little time. Thank you, Your Honor. It's not accurate to say that the specification only discloses respun of respun symbols. The portion of Column 9 at 30 to 34 that I referred to in my opening argument is talking about respun of initial symbols that are the same as one initial symbol that is selected by the player. In terms of the claim differentiation argument, this Court in Curtis Wright has said that even if there are slight differences in other portions of the bodies of two claims, that if a single limitation of a claim is identical but for specific different language, that there's going to be an assumption that that specific different language is there for a reason because it means something different. But isn't your real problem the prosecution history, the fact that the words might be a little broader in these multi-element claims? As a matter of claim construction, construing that provision in light of the prosecution history does appear to require a dependency on player choice. The prosecution history was an evolving process that evolved over time as the claims evolved. And under this Court's precedent, to review the prosecution history for purposes of finding a disclaimer or looking at whether there has been a disclaimer, you have to review the entirety of the prosecution history and see where it started and where it ended. Because applicants are entitled to initially pursue claims based on one theory of player involvement or player choice, and to over time, back and forth with the examiner, realize that there are other grounds for patentability. In this case, there were two separate bases that revealed themselves over time as grounds for patentability. One being the concept of the player choice, and another being the re-spin of one or more symbols. Claims were being rejected by the examiner because they said re-spin of from none to all. And the examiner said if there's a re-spin of no symbols, it's essentially just a prior art slot machine. You spin it once and it's done. And the examiner said if you want to have patentability on the basis of re-spin, you have to say from one to all. Claim 32 was amended at that time to say from one to all. Other claims of the patent were amended to say allowing the player to designate. And I think it's important that someone of skill in the art reviewing the prosecution history, seeing the arguments that were being made, and then seeing this very important thing that happens where the patentee decides to amend many of the claims to say allowing the player to designate, but expressly at that same time does not amend Claim 32, leaves Claim 32 to say designating. It says something very specific that Claim 32 is being pursued on that basis. And, in fact, the examiner here in his notice of allowance says the reason Claim 32 is allowable is because of the incorporation of the from one to all claim language. The re-examination examiner confirmed Claims 32 and 34 were not limited to player designation. They were issued because of the inclusion of the from one to all language. And just very briefly, the appellees talked about Appendix Page 1059 and said that that statement applies to all of the claims. But if you read the statement there, it says, As recited in applicants' claims, the player in applicants' game has been allowed, and it italicizes that word allowed, to designate a chosen number from none to all. That is not the language that was present in Claim 33 at the time, which was issued Claim 32. Every time in the prosecution history where the applicant talks about the player choice, it uses language that was present in other claims, Claim 20 added to Claim 30 added to Claim 1, but does not use the language of Claim 33. And there is no place in the prosecution history where the applicant addresses arguments specifically to Claim 33, which issued as Claim 32, saying that the reason that claim is patentable is because of player choice. That's just simply not the case. Okay, thank you. Thank you. Thank you both. The case is taken under submission.